**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE PAYCHECK PROTECTION PROGRAM ("PPP") AGENT FEES LITIGATION | MDL No. 2950 |
| | ORAL ARGUMENT REQUESTED |

**JPMORGAN CHASE BANK, N.A.'S RESPONSE TO
ALLIANT CPA GROUP LLC'S MOTION FOR TRANSFER OF ACTIONS TO THE
NORTHERN DISTRICT OF GEORGIA PURSUANT TO 28 U.S.C. § 1407 FOR A
COORDINATED AND/OR CONSOLIDATED PROCEEDING**

Gregory E. Ostfeld
GREENBERG TRAURIG LLP
77 West Wacker Drive, Suite 3000
Chicago, IL 60601
Telephone: (312) 456-8400
Facsimile: (312) 465-8435
ostfeldg@gtlaw.com

*Counsel for JPMorgan Chase Bank, N.A.
and JPMorgan Chase & Co.*

<h1 style="text-align: center;">TABLE OF CONTENTS</h1>

I.     INTRODUCTION ........................................................................................................ 1

II.    BACKGROUND ......................................................................................................... 5

     A.     Congress Established the PPP to Provide Funding to Small Businesses................ 5

     B.     Plaintiffs Are Purported Agents Who Allege They Assisted Small Business
Owners in Obtaining PPP Loans............................................................................ 6

     C.     The SBA's PPP Guidance Supplies No Basis for Putative Agents to Recover Fees
Where Those Agents Have Not Complied with the Existing SBA Section 7(a)
Regulatory Scheme Regarding Agent Fees. ........................................................... 7

III.   LEGAL STANDARD................................................................................................. 9

IV.   ARGUMENT AND AUTHORITIES........................................................................ 10

     A.     Transfer and Consolidation of the Claims Against Chase to an MDL Would Serve
the Convenience of the Parties and Witnesses and Would Promote the Just and
Efficient Conduct of the Actions. ........................................................................ 10

     B.     The Claims Against Chase Should Be Separated from the Claims Against Other
Low Frequency Defendants, the Transfer and Consolidation of Which Would Not
Serve the Convenience of the Parties and Witnesses or Judicial Economy. ........ 10

     C.     Chase Agrees with Movant that the Panel Should Transfer the Related Actions to
the Northern District of Georgia. ......................................................................... 12

     D.     Chase Opposes Movant's Suggestion of Transfer to the District of Arizona....... 16

     E.     Chase Opposes the Recent Attempt to Forum Shop by Filing Multiple Agent Fee
Cases on Behalf of the Same Named Plaintiffs in the Southern District of New
York. .................................................................................................................... 18

V.     CONCLUSION....................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
201 F. Supp. 3d 1375 (J.P.M.L. 2016)......................................................................3

*In re 3M Co. Lava Ultimate Prods. Liab. Litig.*,
222 F. Supp. 3d 1347 (J.P.M.L. 2016)....................................................................12

*In re Blair Corp. Chenille Robe Prods. Liab. Litig.*,
831 F. Supp. 2d 1367 (J.P.M.L. 2010)....................................................................12

*In re Brand-Name Prescription Drugs Antitrust Litig.*,
264 F. Supp. 2d 1372 (J.P.M.L. 2003)....................................................................11

*In re Cable Tie Pat. Litig.*,
487 F. Supp. 1351 (J.P.M.L. 1980)...........................................................................9

*In re Concrete Pipe*,
302 F. Supp. 244 (J.P.M.L. 1969)....................................................................12, 18

*In re Electrolux Dryer Prods. Liab. Litig.*,
978 F. Supp. 2d 1376 (J.P.M.L 2013).....................................................................12

*In re Hyundai & Kia Fuel Econ. Litig.*,
923 F. Supp. 2d 1364 (J.P.M.L. 2013)......................................................................3

*In re N. Sea Crude Oil Futures Litig.*,
978 F. Supp. 2d 1384 (J.P.M.L. 2013)....................................................................15

*In re Nat'l Hockey League Players' Concussion Injury Litig.*,
49 F. Supp. 3d 1350 (J.P.M.L. 2014)......................................................................13

*In re Nine West LBO Securities Litig.*,
ECF No. 196, MDL No. 2941 (J.P.M.L. June 2, 2020).........................................18

*In re Ocala Funding, LLC, Commercial Litig.*,
867 F. Supp. 2d 1332 (J.P.M.L. 2012)....................................................................12

*Panda Accounting LLC v. Academy Bank, N.A.*,
No. 2:20-cv-00985-DJH (D. Ariz.)........................................................................17

*In re Pharmacy Benefit Plan Adm'rs Pricing Litig.*,
206 F. Supp. 2d 1362 (J.P.M.L. 2002)..............................................................11, 12

*In re Qwest Communs. Corp. Payphone Serv. Providers Compensation Litig.*,
  No. 1483, 2002 U.S. Dist. LEXIS 21054 (J.P.M.L. Sep. 10, 2002) .......................................10

*In re Takata Airbag Prods. Liab. Litig.*,
  84 F. Supp. 3d 1371 (J.P.M.L. 2015) ..............................................................................13, 14

*In re: Upjohn Co. Antibiotic "Cleocin" Prods. Liab. Litig.*,
  450 F. Supp. 1168 (J.P.M.L. 1978) .............................................................................................13

*In re Wellnx Mktg. & Sales Practices Litig.*,
  505 F. Supp. 2d 1380 (J.P.M.L. 2007) .......................................................................................16

*In re Westinghouse Elec. Corp. Employment Discrimination Litig.*,
  438 F. Supp. 937 (J.P.M.L. 1977) .........................................................................................11, 12

**Federal Statutes**

28 U.S.C. § 1407(a) ............................................................................................. *passim*

**Regulations**

13 C.F.R. § 103.1(a) .........................................................................................................................8

13 C.F.R. § 103.4(e) .........................................................................................................................8

13 C.F.R. 103.5(a) & (b) ................................................................................................................8

85 Fed. Reg. at 20,811 ....................................................................................................................5

85 Fed. Reg. at 20,812 ....................................................................................................................6

85 Fed. Reg. at 20,816 ....................................................................................................................7

SBA Info. Notice No. 9000-1793 ...............................................................................................9

**Other Authorities**

Coronavirus Dashboard, https://www.worldometers.info/coronavirus/country/us/ ....................19

Jesse McKinley and Luis Ferré-Sadurní, "New Yorkers Flattened the Curve. Now
  They're Dropping Their Guard," *New York Times* (June 15, 2020) (available
  at https://www.nytimes.com/2020/06/15/ nyregion/reopen-coronavirus-
  cuomo-ny.html (last visited June 16, 2020) (noting Governor Cuomo may
  "roll back the reopening" in areas due to non-compliance with social
  distancing rules) ......................................................................................................................19

Madeline Holcombe, *12 states see rising Covid-19 hospitalizations as Arizona asks hospitals to activate emergency plans* (June 11, 2020), available at https://www.cnn.com/2020/06/10/health/us-coronavirus-wednesday/index.html ..................................................................................17

Report of Motions Pending Over Six Months for Period Ending September 30, 2019, https://www.uscourts.gov/sites/default/files/data_tables/cjra_8_0930.2019.pdf ...................16

SBA Form 159 (rev. Apr. 2018), available at https://www.sba.gov/document/sba-form-159-fee-disclosure-compensation-agreement .................................................................8

SBA, Off. of Inspector Gen., *Report on the Most Serious Management and Performance Challenges Facing the Small Business Administration in Fiscal Year 2019*, at 8, 9 (Oct. 11, 2018)...........................................................................................8

SBA, *Paycheck Protection Program (PPP) Report: Approvals through 05/23/2020*, available at https://home.treasury.gov/system/files/136/SBA-Paycheck-Protection-Program-Loan-Report-Round2.pdf .........................................................5

The Southern District of New York Response to COVID-19 (Coronavirus), available at https://www.nysd.uscourts.gov/covid-19-coronavirus. .......................................19

U.S. Courts, Civil Justice Reform Act, https://www.uscourts.gov/data-table-report-names/civil-justice-reform-act-cjra ...............................................................................16

Statistics Report, Distribution of Pending MDL Dockets by District, available at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-15-2020.pdf........................................................................................................15

U.S. Judicial Panel on Multidistrict Litigation, MDL Statistics Report – Distribution of Pending MDL Dockets by District, available at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-15-2020.pdf. .................................................15, 19

U.S. Courts, U.S. District Court—Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf .....................................................................................................................17

U.S. District Court, Judicial Caseload Profile, available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf .....................................................................................................................15

U.S. Judicial Panel on Multidistrict Litigation, Multidistrict Litigation Terminated Through September 30, 2019, available at https://www.jpml.uscourts.gov/sites/jpml/files/JPML_Cumulative_Terminated_Litigations-FY-2019.pdf.......................................................................................15

JPMorgan Chase Bank, N.A. ("Chase") agrees in part and objects in part to Alliant CPA Group LLC's ("Movant") Motion for Transfer of Actions to the Northern District of Georgia under 28 U.S.C. § 1407 for a Coordinated and/or Consolidated Proceeding ("Motion") [Dkt. 1].[1] Chase agrees that the putative "Related Actions"[2] should be centralized as to Chase under Section 1407, and that the Northern District of Georgia is an appropriate transferee district. Chase disagrees with Movant, however, that a single industry-wide MDL should be formed as to all 122 different defendants sued in the Related Actions, particularly where many of those defendants are named in only a few actions (many in only one). Including these "low frequency" defendants would needlessly complicate and burden the proposed MDL. Chase therefore asks that the Panel separate the claims against Chase from the claims against other defendants and transfer the Related Actions and any tag-along actions as to Chase to the Northern District of Georgia.

## I.       INTRODUCTION

The Related Actions are putative nationwide class actions scattered across more than fifteen districts around the country, parroting essentially the same claims on behalf of the same proposed class. The same troika of plaintiffs' firms represents the plaintiffs in 10 of the 12 cases initially scheduled in the Motion as well as in numerous tag-along actions,[3] and their complaints are largely interchangeable. The plaintiffs—accountants, law firms, consultants, and other purported "authorized representatives"—allege they devoted time and effort to assisting some

---

[1] Specially appearing Defendant JPMorgan Chase & Co. is a financial holding company under Section 4(k) and (l) of the Bank Holding Company Act of 1956. It is not a proper defendant, as it does not, and never has, participated in the PPP and has made no loans in connection with the PPP.

[2] Chases employs the phrase "Related Actions" and other capitalized phrases defined in Movant's Motion solely for purposes of consistency, but as set forth in this response does not agree that the putative Related Actions are in fact related for all purposes or as to all defendants.

[3] Among other firms, Movant is represented by Geragos & Geragos, P.C.; Graylaw Group, Inc.; and Dhillon Law Group Inc. Those firms, along with Zimmerman Reed, LLP, account for most of the original Related Actions, though copycat actions have now begun to spring up around the country.

number of unidentified small businesses to obtain loans under the recently enacted Paycheck Protection Program ("PPP"). Their allegations, claims, and class definitions are largely identical. With minimal variation, plaintiffs say they are entitled to "agent fees" for unidentified services allegedly provided under Small Business Administration ("SBA") regulations. They do not allege that they have complied with SBA regulations or that they have any relationship or agreement with any PPP lender. Yet plaintiffs generically claim a legal entitlement to fees from PPP lenders and assert that the PPP lenders allegedly have refused to pay, thus purportedly providing the basis for their claims, including unjust enrichment, conversion, and violation of state consumer protection statutes. Chase denies plaintiffs' interpretation of applicable SBA regulations (most of which plaintiffs ignore), denies any liability, and denies that these cases are suited for class certification.

One area of significant variance among the Related Actions is the assortment of defendants named in each case. The tagged complaints encompass at least 122 defendants, along with upwards of 5,000 unidentified "Doe" defendants. Though some defendants, like Chase, are named in several Related Actions,[4] many have been sued in only a handful of cases, and many of those are named in only one case. In numerous instances, the basis for naming these defendants is unclear, as among other things the plaintiffs do not allege facts indicating they are owed agent fees by each defendant. Some of these low frequency defendants have already filed Rule 12 motions to dismiss.

Chase agrees that transfer of all claims *against Chase* in the Related Actions to a single judge would promote the "just and efficient conduct" of this litigation given the identity of allegations and claims across the Related Actions as to Chase. 28 U.S.C. § 1407(a). Plaintiffs' claims against Chase will hinge not only on threshold jurisdictional questions of standing (*i.e.* did the named plaintiffs purportedly assist in the preparation of PPP loan applications for loans made

---

[4] Chase is a defendant in 9 of the 31 presently tagged Related Actions.

by Chase), but also on whether the plaintiffs were, in fact, "authorized representatives" under federal law and the governing SBA regulations, and whether they are entitled to immediate and full payment of agent fees by Chase despite the SBA's preexisting requirement—applicable to PPP loans—requiring lender consent to compensate the agent for work in sourcing or preparing loans in order to collect an agent fee as a crucial safeguard against fraud.[5] These common facts coupled with "common legal issues" support pretrial centralization of the claims against Chase. *See In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 201 F. Supp. 3d 1375, 1377 (J.P.M.L. 2016). Having one judge decide these universal issues will "eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary." *In re Hyundai & Kia Fuel Econ. Litig.*, 923 F. Supp. 2d 1364, 1365 (J.P.M.L. 2013).

Chase disagrees, however, that transferring all claims against *all defendants* across the industry—including innumerable low frequency defendants—into a single MDL would promote either just or efficient conduct of this litigation. Most obviously, given the paucity of plaintiffs' factual allegations as to individual lenders, large numbers of one-off or infrequently named defendants likely do not belong in these cases at all. Chase should not be forced into an industry-wide MDL with defendants that should not have been sued in the first place.[6] Nor should 122 defendants be embroiled in one another's disputes. Different defendants made PPP loans to different borrowers under individual circumstances, and different putative agents have documented (or failed to document) their alleged roles in various ways. Consolidating all claims

---

[5] As discussed in § II.C, *infra*, this question of lender consent is a threshold legal question and a fact-specific determination to be made with respect to each putative agent making a claim against Chase.

[6] This argument likewise applies to defendants named in only two cases in the same district. For example, *William Bookmyer v. PNC Bank, N.A.*, No. 2:20-cv-02284-EAS-KAJ (S.D. Ohio), and *David S. Lowry, CPA, Ltd. v. U.S. Bancorp*, No. 1:20-cv-00348-MWM (S.D. Ohio), both name PNC Bank, N.A. and Huntington National Bank, N.A. as defendants, the only two cases in which those banks have been named.

against all defendants in one MDL would unnecessarily require all defendants to monitor and participate in each other's dispositive motions, discovery disputes, and individualized legal and merits defenses. This would needlessly complicate the litigation and only add delay and expense. It would be more sensible to separate and consolidate the claims against Chase into a single MDL, while allowing the low frequency defendants to proceed with their own defenses in their original districts.

As to venue, the decision of plaintiffs' counsel to file essentially identical putative class actions in hand-picked venues around the country appears to have been designed for an eventual consolidation motion seeking assignment to a forum of their choosing. After an opportunity to survey their assigned judges, plaintiffs have proposed two venues—the Northern District of Georgia and the District of Arizona—as their desired destinations. In other words, the same plaintiffs' firms who orchestrated and filed the vast majority of the original Related Actions all over the country now seek an MDL in the venues they liked best after judges were assigned. This exercise smacks of forum shopping. Nonetheless, though Chase disagrees with plaintiffs' tactics, it agrees with Movant's first choice of forum, as Chase acknowledges the Northern District of Georgia is conveniently situated, has a reasonable and well-managed docket, and has experienced MDL judges with the capacity and knowledge to oversee the proposed MDL. Although plaintiffs' original choice of assignee judge, Judge Leigh Martin May, has recused herself, either the reassigned judge, Judge Michael L. Brown, or an alternative highly experienced and respected judge with MDL experience—Judge Timothy C. Batten, Sr.—appear to be highly appropriate choices as assignee judges, as would other judges in the district.

Movant offers no compelling reason why these cases should be transferred to the District of Arizona. An objective review shows the District of Arizona is less convenient to the parties and

has less connection to these cases. Likewise, though one plaintiffs' firm has recently filed four cases in the Southern District of New York and seems likely to advocate for that district after transferring all four cases before one judge, Senior Judge Jed S. Rakoff, multiple factors counsel against assignment to that district. For one thing, the Panel just recently assigned the *Nine West* MDL to Judge Rakoff. For another, the district is not conveniently situated, already has among the most MDLs in the country, and is still recovering from the lingering impact of the extremely high rate of COVID-19 infections in New York City given, among other things, the population density there and initial concerns regarding compliance with reopening protocols.

Chase thus requests, consistent with Movant's preference, that the Related Actions be transferred under Section 1407 to the Northern District of Georgia for pretrial proceedings.

## II.     BACKGROUND

### A.     Congress Established the PPP to Provide Funding to Small Businesses.

The Related Actions grow out of the large-scale SBA lending program recently enacted to address the economic fallout caused by nationwide COVID-19 shutdowns. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, P.L. 116-136, was signed into law on March 27, 2020, and was designed so that the SBA could "provide relief to America's small businesses expeditiously."[7] Among other things, the CARES Act established the PPP, now a $511 billion loan program,[8] which amended Section 7(a) of the Small Business Act and authorized the SBA to "guarantee loans under the PPP through June 30, 2020."[9] More than 5,000 lenders volunteered to participate in the PPP, including Chase.

---

[7] First Interim Final Rule, 85 Fed. Reg. at 20,811 (Apr. 2, 2020).
[8] *See* SBA, *Paycheck Protection Program (PPP) Report: Approvals through 05/23/2020*, available at https://home.treasury.gov/system/files/136/SBA-Paycheck-Protection-Program-Loan-Report-Round2.pdf (last visited May 27, 2020).
[9] 85 Fed. Reg. at 20,812.

**B.    Plaintiffs Are Purported Agents Who Allege They Assisted Small Business Owners in Obtaining PPP Loans.**

Movant and the plaintiffs in the Related Actions are not PPP borrowers suing lenders.[10] Rather, each plaintiff alleges that it "served as the Agent and was an Agent for small businesses applying for the PPP loans to be lent by the Defendants and backed by the full faith and credit of the Federal Government." [Dkt. 1-6 ¶ 37]. Plaintiffs contend (incorrectly) that they are entitled to agent fees from PPP lenders for providing unidentified services to borrowers in obtaining PPP loans. Although plaintiffs' individual claims vary slightly in the details, the allegations, claims, and class definitions are essentially indistinguishable, with all plaintiffs alleging in copycat fashion that they did not receive agent fees for providing these unidentified services to (mostly unidentified) PPP borrowers.

One area where the Related Actions are not uniform is as to the defendants. Far from it, each complaint in each Related Action lists varying combinations of named and unnamed "Doe" defendants, with 122 named defendants and upwards of 5,000 unnamed "Doe" defendants included across the Related Actions scheduled or tagged to date. [*See* Dkts. 1-6, 1-7, 1-8, 1-9, 1-10, 1-11, 1-12, 1-13, 1-14, 1-15, 1-16, 1-17, 25-3, 89-3, 94-3, 98-3, 98-4, 98-5, 98-6, 98-7, 98-8, 98-9, 111-3, 111-4, 134-2, 134-3, 135-3, 135-4, 135-5, 135-6]. Though some defendants, like Chase, are named in several cases, many are named in only one or two complaints.

The complaints sparsely identify the basis for naming each defendant. Movant's complaint, for example, names 15 defendants, and the sole individual allegation as to each defendant merely identifies the defendants' headquarters and alleges substantial business in the district. [Dkt. 1-6, ¶¶ 2-17]. Movant generically asserts that it assisted its borrower clients in preparing PPP loan

---

[10] Separate Section 1407 motions to consolidate cases brought by small business PPP borrowers is pending before the Panel in *In re JPMorgan Chase Paycheck Protection Plan Litig.*, MDL No. 2944. Chase has opposed those motions, as the borrower claims are factually dissimilar and in many cases are likely moot.

applications and claims it is entitled to an agent fee from unidentified lenders. But Movant does not allege facts showing which of the fifteen named defendants, if any, provided PPP loans to Movant's clients, what role Movant had in preparing those applications, or Movant's basis for claiming it is entitled to agent fees from each defendant. [*Id.* ¶¶ 40-47]. Some of the low frequency defendants have already moved to dismiss the complaints against them and oppose consolidation to avoid the burden of participating in a massive MDL to resolve the limited claims against them.

## C. The SBA's PPP Guidance Supplies No Basis for Putative Agents to Recover Fees Where Those Agents Have Not Complied with the Existing SBA Section 7(a) Regulatory Scheme Regarding Agent Fees.

The SBA rolled out the PPP with unprecedented speed for such a significant lending program. The agency issued its first PPP Interim Final Rule and launched the program on April 3, 2020, just one week after the CARES Act passed, and it has since issued additional rules to continue guiding borrowers and lenders. This rolling guidance has applied to all aspects of the PPP, including the payment of agent fees. For example, the First Interim Final Rule explains that the "SBA will pay lenders fees for processing PPP loans," detailing the amounts of those fees.[11] The First Interim Final Rule further states that, "[a]gent fees will be paid by the lender out of the fees the lender receives from the SBA" and that "[a]gents may not collect fees from the borrower or be paid out of the PPP loan proceeds."[12]

In subsequent guidance to lenders on April 28, 2020, the SBA announced that it would be publishing forms and processes regarding agent fees. In a Fifth Interim Final Rule, the SBA stated that it "will make available a specific SBA Form 1502 reporting process through which PPP lenders will report on PPP loans and collect the processing fee on fully disbursed loans to which

---

[11] 85 Fed. Reg. at 20,816.
[12] *Id.*

they are entitled."[13] This Fifth Interim Final Rule requires lenders to upload loan information within a certain period, and it provides that lenders will not receive processing fees unless certain criteria are satisfied as to each PPP loan.[14]

The PPP was not written on a blank slate. Although the CARES Act delegated to the SBA the authority to set a limit for agent fees, it has not otherwise modified the existing agent-fee framework. Part 13 of the Code of Federal Regulations provides "Standards for Conducting Business with SBA." Among its "key definitions," the regulation defines an "agent" as an "authorized representative." 13 C.F.R. § 103.1(a). In the context of the SBA's 7(a) loan program (which the PPP is a part of), agents are "authorized" only when the lender has consented to the agent taking actions on its behalf, or when the lender has agreed to compensate the agent for work in sourcing loans or assisting in preparing loan applications on the lender's behalf.[15] An authorized agent must also "execute and provide to the SBA a compensation agreement" that outlines the agent's agreement with the borrower or the lender.[16]

These legal requirements allow the SBA to determine whether the agreed-upon fees are consistent with SBA rules and to guard against fraud by unscrupulous agents.[17] The SBA's interim

---

[13] *Id*. at 26,323.

[14] *Id.*

[15] 13 C.F.R. § 103.1(a).

[16] *Id.* § 103.5(a) & (b); *see also* SBA Form 159 (rev. Apr. 2018), available at https://www.sba.gov/document/sba-form-159-fee-disclosure-compensation-agreement (requiring lender to certify that "representations of services rendered and the amounts charged as identified in this form are reasonable and satisfactory to it").

[17] *See* 13 C.F.R. § 103.4(e) (making agents subject to enforcement actions for "[c]harging or proposing to charge any fee that does not bear a necessary and reasonable relationship to the services actually rendered or expenses actually incurred in connection with a matter before SBA or which is materially inconsistent with the provisions of an applicable compensation agreement"); *see also* SBA, Off. of Inspector Gen., *Report on the Most Serious Management and Performance Challenges Facing the Small Business Administration in Fiscal Year 2019*, at 8, 9 (Oct. 11, 2018) ("OIG investigations have revealed a pattern of fraud by loan packagers and other for-fee agents in the 7(a) Loan program, involving hundreds of millions of dollars."); SBA Info. Notice No. 9000-1793, SBA, Off. of the Inspector Gen. (Apr. 7, 2009) (outlining lender guidelines "[t]o protect against a potentially corrupt loan agent").

final rules have not altered these existing regulations or any of the legal framework for authorizing and paying agent fees. Any notion that lenders must immediately pay agent fees to any person who simply claims to have assisted borrowers obtain PPP loans finds no support in the CARES Act, the SBA's regulatory scheme, or any other authority. Whether any particular plaintiff or putative class member satisfies the Section 7(a) requirements to claim entitlement to agent fees is thus a highly individualized, fact-specific inquiry that turns on whether each individual lender approved the agent's services prior to the agent's work, substantiation that the agent indeed performed work for the loan application, and the value of the loan originated and funded by the lender relative to the sliding scale fee structure recognized by the SBA for authorized agents. To the extent plaintiffs apparently contend that lender pre-approval is not required, though Chase disagrees, that position itself entails an even more individualized analysis to determine not only the same facts as above (minus pre-approval) but also whether and how each putative agent was retained by each borrower to perform services on a loan application.

## III.    LEGAL STANDARD

The Panel may transfer "civil actions involving one or more common questions of fact" that "are pending in different districts" to a single district "for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). Transfer is appropriate when (1) the civil actions involve "common questions of fact"; (2) transfer will be "for the convenience of the parties and witnesses"; and (3) transfer will "promote the just and efficient conduct of such actions." *Id.* The party seeking consolidation must show that transfer "will further the purposes of Section 1407." *In re Cable Tie Pat. Litig.*, 487 F. Supp. 1351, 1354 (J.P.M.L. 1980).

# IV. ARGUMENT AND AUTHORITIES

**A.** **Transfer and Consolidation of the Claims Against Chase to an MDL Would Serve the Convenience of the Parties and Witnesses and Would Promote the Just and Efficient Conduct of the Actions.**

Chase agrees with Movant that the Related Actions share common legal issues and factual allegations and that pretrial consolidation as to the claims against Chase is appropriate under Section 1407. [*See* Dkt. 1-1 at 2]. Indeed, Chase sees little other choice. As described above, Chase is named in several of the carbon-copy Related Actions. In each case, the putative agent plaintiffs allege that they are entitled to agent fees, which the defendants have not paid. Though the complaints fail to specify which plaintiffs assisted which borrowers in obtaining loans from which defendants, Chase acknowledges that, as one of the largest PPP lenders, it will likely be identified as a defendant by several plaintiffs—though the specific plaintiffs and the facts underlying their claims remain unclear. Thus, there is enough overlap in claims against Chase to support transfer and pretrial consolidation of the Related Actions as to Chase. *See In re Qwest Communs. Corp. Payphone Serv. Providers Compensation Litig.*, No. 1483, 2002 U.S. Dist. LEXIS 21054, at *3 (J.P.M.L. Sep. 10, 2002) ("[T]he Panel finds that these actions involve common questions of fact arising out of allegations that Qwest has violated the Federal Communications Act and its regulations, or breached common law, by failing to make proper payments to payphone service providers for coinless payphone calls."). Centralizing the claims against Chase would also serve judicial economy by avoiding duplicative motion practice, piecemeal discovery, and inconsistent or repetitive rulings. Chase thus supports an MDL for the claims against it.

**B.** **The Claims Against Chase Should Be Separated from the Claims Against Other Low Frequency Defendants, the Transfer and Consolidation of Which Would Not Serve the Convenience of the Parties and Witnesses or Judicial Economy.**

Though Chase supports an MDL as to the claims against it, it opposes consolidation of all claims industry-wide against all defendants into a single MDL. That outcome would serve neither

convenience nor judicial economy. Section 1407 offers a better alternative: The Panel "may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded." 28 U.S.C. § 1407(a). This provision is "routinely" read in a "flexible fashion" to give the Panel substantial discretion. *In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1375 (J.P.M.L. 2003). Chase respectfully proposes that the Panel exercise its discretion to separate the claims against Chase from those against the other defendants—especially low frequency defendants whose participation in a large-scale MDL would not yield convenience or efficiency—and create an MDL as to the claims against Chase alone, while leaving the claims against the other defendants to be litigated separately.

Chase's proposal would best promote Section 1407's convenience and efficiency goals. As to Chase, the Related Actions raise common fact issues that would be best addressed in consolidated pretrial proceedings. As to other defendants, however, a myriad of individualized issues would predominate over any common questions of fact. At the top of this list is whether the named plaintiffs can present facts as to each defendant to assert standing and state a claim that each named plaintiff is owed an agent fee by each defendant. That issue alone raises individualized questions as to each defendant that lack commonality as to any other defendant, requiring individualized adjudication and resolution. Chase and the other defendants should not be required to join together in an industry-wide MDL preoccupied with such individualized issues.

Consolidation is inappropriate when common issues do not "predominate over individual factual issues," as would be the case for an all-inclusive, industry-wide MDL. *In re Westinghouse Elec. Corp. Employment Discrimination Litig.*, 438 F. Supp. 937, 939 (J.P.M.L. 1977); *see also In re Pharmacy Benefit Plan Adm'rs Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002)

(denying transfer where "unique questions of fact predominate over any common questions").[18] Discovery issues will vary even for claims that might survive dismissal as to individual defendants, as different putative agents have either documented or failed to document their alleged entitlement to an agent fee differently, and defendants have thus responded differently. *See In re Pharmacy Benefit Plan Administrators*, 206 F. Supp. 2d at 1363 (recognizing that transfer is inappropriate when individual discovery predominates); *In re Westinghouse*, 438 F. Supp. at 938.

This would not, of course, prevent the original districts from monitoring an MDL for relevant rulings and developments or from employing informal coordination and cooperation with the MDL as appropriate. *In re 3M Co. Lava Ultimate Prods. Liab. Litig.*, 222 F. Supp. 3d 1347, 1348 (J.P.M.L. 2016). But creating an all-encompassing MDL would only force differently situated defendants with different legal and merits defenses into a single inefficient proceeding.

## C. Chase Agrees with Movant that the Panel Should Transfer the Related Actions to the Northern District of Georgia.

Movant's counsel singles out two judges for proposed consolidation, which—after filing numerous largely identical cases seeking to represent essentially identical nationwide classes in cases across the country—suggests the kind of forum-shopping this Panel historically disfavors. *See In re Concrete Pipe*, 302 F. Supp. 244, 256 (J.P.M.L. 1969) (recognizing that the Panel should inquire whether transfer "serve[s] any ulterior motive of any party or parties, such as forum-shopping"). Nonetheless, while Chase does not condone Movant's tactics, it does support Movant's first choice of venue. The Northern District of Georgia is geographically central, has a relatively unburdened docket, is home to judges with substantial MDL experience, is convenient

---

[18] *See also In re Electrolux Dryer Prods. Liab. Litig.*, 978 F. Supp. 2d 1376, 1377 (J.P.M.L 2013); *In re Ocala Funding, LLC, Commercial Litig.*, 867 F. Supp. 2d 1332 (J.P.M.L. 2012); *In re Blair Corp. Chenille Robe Prods. Liab. Litig.*, 831 F. Supp. 2d 1367 (J.P.M.L. 2010).

to the most parties and witnesses, and is preferred by parties on both sides of the case. Accordingly, Chase supports transfer to a judge in that district.

The Panel considers various factors in deciding where to transfer consolidated actions, including: the geographical centrality and convenience of the district; the likelihood of additional actions being filed in the district; the docket of the proposed transferee court; the location of the parties and witnesses; and the preference of the parties. *See., e.g., In re Nat'l Hockey League Players' Concussion Injury Litig.*, 49 F. Supp. 3d 1350, 1350 (J.P.M.L. 2014); *In re: Upjohn Co. Antibiotic "Cleocin" Prods. Liab. Litig.*, 450 F. Supp. 1168, 1169-71 (J.P.M.L. 1978). These factors support transfer to Northern District of Georgia.

Among the Related Actions, no case stands apart as being materially more advanced than the others. The cases were filed within weeks of each other, and no discovery has started. The PPP is a nationwide lending program, and thus far no critical mass of cases in any one district has emerged apart from the jockeying of plaintiffs' counsel to manufacture the appearance of volume by having the same plaintiffs file multiple suits in a single district. Notwithstanding these efforts, with over thirty cases filed in more than fifteen states, brought by various plaintiffs against a panoply of national and regional lenders, "[n]o one district stands out as the geographic focal point." *In re Takata Airbag Prods. Liab. Litig.*, 84 F. Supp. 3d 1371, 1373 (J.P.M.L. 2015). The following map shows the national distribution of the cases, with somewhat more cases aggregating in the eastern half of the United States than the western:



Chase thus agrees with Movant's opening arguments in support of the Northern District of Georgia. As Movant notes, "the ease of access, economical travel options, Atlanta's banking and financial services industry and its geographically central location make the Northern District of Georgia the appropriate transferee forum for this MDL." [Dkt. 1-1 at 13]. Geographic centrality is especially important given significant travel restrictions imposed in response to COVID-19. A more central venue means reduced travel time. And convenience is even more important now. As an airline hub with direct flights to most of the country, counsel and parties travelling to Atlanta will likely have fewer connections, which also means reduced exposure to COVID-19 (and less time wearing a mask on an airplane). Atlanta "is also safer from a health perspective than many of the alternative venues," as Georgia "has recently seen its Coronavirus related hospitalizations dip below 1,000 for the first time since that statistic has been measured." [*Id.* at 15]. Having been "the first state to begin re-opening procedures" [*id.*], Atlanta will have abundant and readily available restaurants, lodging, and ground transportation.

The district also has the capacity and experience to handle this multidistrict litigation. The district has an efficient docket, shown by its 6.4 month filing-to-disposition timeframe for civil

cases, the eleventh fastest rate in the nation.[19] The district also has had significant recent experience with MDLs, with 30 MDLs having been assigned and 11 assigned since 2010.[20] At the same time, only 4 MDLs are currently pending in the district, indicating an efficient disposition rate.[21]

Although Movant's case has been reassigned from Judge Leigh Martin May to Judge Michael L. Brown following Judge May's recusal, Judge Brown is an appropriate transferee judge. Indeed, Movant's arguments in favor of Judge May apply equally in support of Judge Brown. Like Judge May, Judge Brown had a distinguished career prior to joining the bench, both as a partner at Alston & Bird, LLP and as an Assistant United States Attorney. Though Judge Brown was only recently appointed in January 2018, the length of time that he has been on the bench should not dissuade the Panel from assigning these cases to him. *See In re N. Sea Crude Oil Futures Litig.*, 978 F. Supp. 2d 1384, 1385 (J.P.M.L. 2013) (appointing to presiding judge with two years' experience as a district judge).[22]

If the Panel is dissuaded from transferring this MDL to Judge Brown based on his judicial tenure or the demands of his docket,[23] the Northern District of Georgia has several other highly

---

[19] U.S. District Court, Judicial Caseload Profile, available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf (last visited June 4, 2020).

[20] U.S. Judicial Panel on Multidistrict Litigation, Multidistrict Litigation Terminated Through September 30, 2019, available at https://www.jpml.uscourts.gov/sites/jpml/files/JPML_Cumulative_Terminated_Litigations-FY-2019.pdf (last visited June 4, 2020); U.S. Judicial Panel on Multidistrict Litigation, MDL Statistics Report, Distribution of Pending MDL Dockets by District, available at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-15-2020.pdf (last visited June 4, 2020).

[21] U.S. Judicial Panel on Multidistrict Litigation, MDL Statistics Report – Distribution of Pending MDL Dockets by District, available at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-15-2020.pdf (last visited June 11, 2020).

[22] Judge May, whom Movant maintains "possesses the qualifications and skill to preside over" an MDL, [Dkt. 1-1 at 18], has only been on the bench since late 2014. Given their comparable pre-judicial legal experience, a difference in roughly three years of judicial experience should not disqualify Judge Brown.

[23] Chase acknowledges that, as of the last Criminal Justice Reform Act Report in September 30, 2019, Judge Brown had 204 motions that have been pending for six months or more. *See* U.S. Courts, Civil Justice

qualified jurists the Panel could select. In particular, Judge Timothy C. Batten, Sr. has 14 years' experience on the bench, and is "an experienced transferee judge,"[24] having previously and ably presided over the *Delta/Air Tran Baggage Fee Antitrust* MDL (No. 2089). With respect to case management, CJRA reports since 2010 show that Judge Batten's docket has had only a handful of cases pending longer than three years or motions pending more than six months, and none since 2017.[25] With early dispositive motion practice expected in this litigation, Judge Batten's efficiency and relatively unburdened docket would be an asset and serve the goals of Section 1407.

Other judges in the district are also fine candidates. Senior Judge Richard W. Story is an experienced jurist with four decades' worth of experience as a judge, including 22 years with the Northern District of Georgia. Judge Story's experience as the transferee judge in the *Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liability* MDL would give him significant experience to draw from. Judge Steven D. Grimberg would also be well-suited for these cases. While a recent judicial appointee, Judge Grimberg has substantial experience both in private practice and as an Assistant United States Attorney. He also has capacity on his docket. Like Judge Batten, Judge Grimberg does not have any motions that have been pending in his court for longer than six months or any cases that have been pending longer than three years.

**D.    Chase Opposes Movant's Suggestion of Transfer to the District of Arizona.**

Chase disagrees with Movant that "the District of Arizona offers a convenient and economical alternative to the Northern District of Georgia." [Dkt. 1-1 at 19]. Several factors militate against assigning these cases to the Northern District of Arizona.

---

Reform Act, Report of Motions Pending Over Six Months for Period Ending September 30, 2019, https://www.uscourts.gov/sites/default/files/data_tables/cjra_8_0930.2019.pdf.
[24] *In re Wellnx Mktg. & Sales Practices Litig.*, 505 F. Supp. 2d 1380, 1381 (J.P.M.L. 2007).
[25] *See* U.S. Courts, Civil Justice Reform Act, https://www.uscourts.gov/data-table-report-names/civil-justice-reform-act-cjra.

First, Movant overstates the various defendants' connections to the Phoenix area. The *Panda Accounting* case, which is the only one of the Related Actions pending in the District of Arizona, involves only one plaintiff and three defendants.[26] Although some defendants may "have branch locations in Phoenix" and "conduct business" in Arizona, that does not make the District of Arizona "a strong alternative venue." [Dkt. 1-1 at 20]. A bank's branch locations are not a "nerve center" or even a material consideration in the Related Actions.[27] Although several of the defendants are national banks with branches in Arizona, they are being sued for their lending activities throughout the country and thus the locations of their various branches supply no rationale for centralization in any particular district. These connections are wholly superfluous and not relevant to the Panel's consideration. Given the larger aggregation of Related Actions in eastern districts than western districts, the District of Arizona is also more geographically remote.

Second, the District of Arizona has a relatively congested docket. In sharp contrast to the Northern District of Georgia, the District of Arizona has the 12th highest ratio in the nation of pending actions per judgeship at 829 cases, and the 76th longest median time between filing of civil cases and disposition at 11.7 months.[28]

Third, Arizona has recently seen a concerning spike in COVID-19 infections and hospitalizations, and state officials have asked hospitals to activate emergency plans.[29] This raises

---

[26] *See* Compl. (ECF No. 1), *Panda Accounting LLC v. Academy Bank, N.A.*, No. 2:20-cv-00985-DJH (D. Ariz.).

[27] While Chase's main office is in Columbus, Ohio, none of the Identified Actions is pending there, and the Southern District of Ohio is an ill-suited venue for this MDL. With only four active judges in the Columbus Division, the Southern District of Ohio has two MDLs currently assigned (MDL Nos. 2433 and 2846), as well as the fifth highest ratio of actions per judgeship in the country.

[28] U.S. Courts, U.S. District Court—Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf.

[29] Madeline Holcombe, *12 states see rising Covid-19 hospitalizations as Arizona asks hospitals to activate emergency plans* (June 11, 2020), available at https://www.cnn.com/2020/06/10/health/us-coronavirus-wednesday/index.html (last visited June 11, 2020).

concerns of operational disruptions, greater exposure risk, and lack of ready access to restaurants, lodging, and ground transportation.

**E.      Chase Opposes the Recent Attempt to Forum Shop by Filing Multiple Agent Fee Cases on Behalf of the Same Named Plaintiffs in the Southern District of New York.**

Lastly, Chase notes that one plaintiffs' firm has recently filed four separate actions—all with the same two overlapping plaintiffs (James Quinn and Fahmia, Inc.)—in the Southern District of New York, with one filed on May 28 and three filed on May 29, and then had all four cases transferred to the same judge, Senior Judge Jed S. Rakoff. [*See* Dkt. 98]. This filing of multiple complaints by the same plaintiffs in the same court at the same time appears to be another attempt at forum-manipulation, creating the illusion of a non-existent center of gravity in that court. Given that maneuvering, Chase anticipates plaintiffs in those actions will seek Section 1407 consolidation in the Southern District of New York.

Judge Rakoff is an experienced and well-respected jurist, but plaintiffs' efforts to give the appearance of a center of gravity where none exists merits no more weight than Movant's attempts at forum-shopping. *See In re Concrete Pipe*, 302 F. Supp. at 256. And apart from the decision by one law firm to file four lawsuits on behalf of the same two plaintiffs in the last two weeks, there is little to recommend the Southern District of New York as an appropriate venue in this case.

First, the Southern District of New York already has 17 pending MDLs, placing it second in the nation in total MDL assignments behind only the Northern District of California. This includes the *Nine West* MDL, which the Panel recently assigned to Judge Rakoff.[30] This suggests the weight of MDL assignments is currently being borne disproportionately by the Southern

---

[30] *In re Nine West LBO Securities Litig.*, ECF No. 196, MDL No. 2941 (J.P.M.L. June 2, 2020).

District of New York relative to the other districts under consideration.[31] Assigning a second MDL to Judge Rakoff within months of the first would disproportionately burden both the district and the individual judge, particularly where other factors weigh against the district as described below.

Second, New York is not geographically central and would be inconvenient to parties and counsel situated far outside the district, including California, Colorado, Utah, Texas, Washington, and Florida.

Third, New York remains by far the worst-hit of all states by the COVID-19 pandemic, with more than 400,000 total cases, more than 30,000 deaths, and more than 285,000 active cases.[32] This has resulted in large-scale disruption of operations at the Southern District of New York, with continued court closures and operations still being managed on a judge-by-judge and case-by-case basis.[33] Though the city has begun to recover and reopen, the exposure risk in New York remains higher than in other districts, and it is reasonable to anticipate continued restricted access to restaurants, lodging, and ground transportation. That likelihood has only increased in recent days as Governor Cuomo has threatened to roll back reopening based on non-compliance with social distancing rules in certain areas during the early stages of reopening.[34]

## V.    CONCLUSION

For the foregoing reasons, Defendant JPMorgan Chase Bank, N.A. asks that the Panel grant in part and deny in part Alliant CPA Group LLC's Motion for Transfer of Actions to the Northern

---

[31] U.S. Judicial Panel on Multidistrict Litigation, MDL Statistics Report – Distribution of Pending MDL Dockets by District, available at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-15-2020.pdf (last visited June 11, 2020).

[32] *See* Coronavirus Dashboard, https://www.worldometers.info/coronavirus/country/us/ (last visited May 27, 2020).

[33] *See* The Southern District of New York Response to COVID-19 (Coronavirus), available at https://www.nysd.uscourts.gov/covid-19-coronavirus (last visited June 11, 2020).

[34] *See* Jesse McKinley and Luis Ferré-Sadurní, "New Yorkers Flattened the Curve. Now They're Dropping Their Guard," *New York Times* (June 15, 2020) (available at https://www.nytimes.com/2020/06/15/nyregion/reopen-coronavirus-cuomo-ny.html (last visited June 16, 2020) (noting Governor Cuomo may "roll back the reopening" in areas due to non-compliance with social distancing rules).

District of Georgia Pursuant to 28 U.S.C. § 1407 for a Coordinated and/or Consolidated Proceeding [Dkt. 1]. Chase asks that the Panel separate the claims against Chase and transfer and consolidate them in an MDL before Judge Michael L. Brown, Judge Timothy C. Batten, Sr., or any other jurist deemed appropriately qualified and experienced by the Panel in the Northern District of Georgia.

Respectfully submitted,

/s/ *Gregory E. Ostfeld*
Gregory E. Ostfeld
GREENBERG TRAURIG LLP
77 West Wacker Drive, Suite 3000
Chicago, IL 60601
Telephone: (312) 456-8400
Facsimile: (312) 465-8435
ostfeldg@gtlaw.com

*Counsel for JPMorgan Chase Bank, N.A.*
*and JPMorgan Chase & Co.*